UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

JAMES DARRIS                                                                                    PLAINTIFF

V.                              NO. 3:20CV00042 BSM-JTR

ANDREW SAUL,
Commissioner of Social Security Administration[1]                    DEFENDANT

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**I.   Introduction:**

Plaintiff, James Darris ("Darris"), applied for disability benefits on June 19, 2017, alleging disability beginning on June 5, 2017. (Tr. at 10). After conducting a

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

1

hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 22). The Appeals Council denied his request for review. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II.     The Commissioner's Decision:

The ALJ found that Darris had not engaged in substantial gainful activity since the alleged onset date of June 5, 2017. (Tr. at 13). At Step Two, the ALJ found that Darris had the following severe impairments: obesity, lumbar and cervical degenerative disc disease, hypertension, cardiomyopathy with diastolic dysfunction and history of congestive heart failure, diabetes, neuropathy, headache, carpal tunnel syndrome of the right arm, anxiety, and depression. *Id*.

After finding that Darris's impairments did not meet or equal a listed impairment (Tr. at 13), the ALJ determined that Darris had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, except that: (1) he could only occasionally climb ramps and stairs and only occasionally balance, stoop, kneel, crouch, and crawl; (2) he could only occasionally reach overhead; (3) he could only occasionally be exposed to extreme heat, extreme cold, and vibration; (4) he could frequently handle and finger; (5) he could never climb ladders, ropes,

or scaffolds; (5) he could never be expose to unprotected heights; (7) he could understand and remember simple instructions; (8) he could sustain attention and concentration to complete simple tasks with regular breaks every two hours; (9) he could have occasional interaction with supervisors, coworkers, and the public; and (10) he could adapt to routine work conditions and occasional workplace changes. (Tr. at 16).

The ALJ determined that, based on his RFC, Darris was unable to perform any past relevant work. (Tr. at 20). At Step Five, the ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Darris's age, education, work experience, and RFC, he could perform jobs in the nationally economy, such as circuit board assembler, addresser, and stuffer. (Tr. at 21). Thus, the ALJ found that Darris was not disabled. *Id*.

**III.   Discussion:**

A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the

3

record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

The United States Supreme Court recently held that "whatever the meaning of 'substantial' is in other contexts, the threshold for such evidentiary sufficiency [in Social Security Disability cases] is not high. Substantial evidence…is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  Darris's Arguments on Appeal

Darris contends that substantial evidence does not support the ALJ's decision

to deny benefits. He argues that the ALJ: (1) failed to fully develop the record; (2) failed to resolve a conflict between the VE testimony and the *Dictionary of Occupational Titles* ("DOT"); and (3) failed to properly consider Darris's long work history. For the following reasons, the Court finds support for reversal, based upon the record development claim.

The ALJ properly found cervical degenerative disc disease to be a severe impairment, but erred by not ordering a consultative examination or obtaining a treating source's medical opinion about the condition. The ALJ has a duty to develop the record fully, even when the claimant is represented by counsel, and must order a consultative examination if it is necessary to make an informed decision. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). The ALJ "acts as an examiner charged with developing the facts." *Richardson v. Perales*, 402 U.S. 389, 410, 91 S.Ct. 1420, 1431, 28 L. Ed. 2d 842 (1971) and *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000).

In this case, a 2017 cervical spine MRI showed: (1) disc extrusion contacting the nerve root; and (2) flattening of the right aspect of the spinal cord. (Tr. at 561-562). Darris saw neurosurgeon Rebecca Barrett-Tuck, M.D., on December 6, 2017, for severe radiating neck pain. (Tr. at 628-631). She noted extensive disc rupture. *Id*. Due to "severe, constant right arm pain," she recommended discectomy and fusion

surgery, which she performed on January 22, 2018. (Tr. at 632-662). Her post-operative diagnosis was severe spondylitic disease with canal stenosis and disc degeneration. *Id*. Darris was discharged after surgery with instructions to not lift things weighing more than a gallon of milk. (Tr. at 645-648).

Darris made some improvements after surgery, but his pain returned. In July 2018, Darris saw a pain management specialist (an APRN at Northeast Arkansas Pain Medicine) and he reported significant, worsening back pain radiating into his arms and legs. (Tr. at 854-860). He experienced a decreased ability to perform daily activities and a decreased quality of life due to pain. *Id*. Darris said he needed help getting out of bed. *Id*. The nurse noticed pain with range of motion and a wide-based, antalgic gait. *Id*. After performing a clinical examination, she diagnosed cervical spondylosis, post-laminectomy syndrome, facet arthropathy, and chronic pain. *Id*. She recommended that Darris "aggressively pursue medical management." *Id*. Notably, the ALJ did not reference this pain management evaluation, which detailed significant problems even after Darris's surgery.

In 2017, a Disability Determination Services doctor reviewed the records and said that a consultative examination was required for proper evaluation of Darris's application for benefits. (Tr. at 86, 111). The ALJ ordered no such examination. In May 2018, another reviewing doctor found moderate functional limitations, but this

6

opinion issued before Darris's deterioration. (Tr. at 118). Follow-up MRIs were recommended, and at the April 2019 hearing, Darris said he had undergone a cervical MRI and had an appointment with Dr. Barrett-Tuck to discuss the results and pursue additional treatment. (Tr. at 39). Those records are not in evidence, and the ALJ did not recontact Dr. Barrett-Tuck to obtain them. The only medical opinions in the record were from the DDS reviewing doctors, and those opinions were in conflict (one imposed reaching limitations and one did not). (Tr. at 86-90, 111-116). Because the record showed deterioration in Darris's condition and a conflict between the two DDS doctors' opinions, the ALJ should have ordered a consultative examination, at the least. He erred by not fully developing the record, and he also erred by failing to discuss the pain management records from July 2018, dated after Darris's surgery and after the DDS opinion evidence.

### III. **Conclusion:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ failed to properly develop the record.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 16th day of September, 2020.

_____
UNITED STATES MAGISTRATE JUDGE